UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CHRIS A SANCHEZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. G-10-378 |
| | § | |
| DEPUTY DAVIDSON, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Before the Court is the motion for summary judgment of defendant Galveston County Sheriff's Office deputies Jonathan Davidson, Jay Young and Galveston County Sheriff Freddie Poor, filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. No. 40). The plaintiff filed a response. (Doc. No. 57). After a careful review of the summary judgment motion and exhibits, the response and the applicable law, the Court will grant the motion for summary judgment for the reasons that follow.

## I.    BACKGROUND

On April 10, 2010, deputy Davidson was patrolling the San Leon/Bacliff area of Galveston County when he observed two approaching vehicles - a minivan, followed by a pickup truck. Davidson saw the mini-van swerve off the road onto the shoulder and then violently swerve back across the road into oncoming traffic. After the two vehicles passed him, Davidson turned his car around and saw the pick-up truck pass the swerving mini-van. Davidson radioed dispatch to advise them of the traffic stop, activated his emergency lights, and began pursuit of the mini-van. The mini-van did not stop; therefore, Davidson activated his siren and swept the driver's side of the mini-van with his spotlight. The mini-van again failed to stop and continued on for approximately 16 more blocks. The mini-van then turned into a San Leon RV park and

stopped near a small trailer. Deputy Bouse was parked on the road nearby and followed Davidson into the RV park. Deputy Young was also in pursuit.

Davidson exited his vehicle and told the driver, Plaintiff Sanchez, to get out of his vehicle and show his hands. The plaintiff refused and Davidson repeated the command. When the plaintiff again refused, Davidson opened the door of the min-van, pointed his weapon at the plaintiff and ordered him to show his hands and get out of the vehicle. The plaintiff refused. Davidson therefore holstered his weapon, grabbed the plaintiff by the jacket and tried to pull him out of the mini-van. The plaintiff lunged at Davidson and Davidson fell to the ground, yelling in pain. Deputy Young immediately intervened and struggled to secure the plaintiff, who was flailing his arms and legs in an attempt to strike Young. Young wrestled the plaintiff to the ground while the plaintiff continued to kick, and placed him face-down on the driveway (which was composed of crushed oyster shells) while deputy Bouse attended to deputy Davidson, who was still lying on the ground. With assistance, Young handcuffed the plaintiff and placed him in the patrol car. Soon thereafter, a first responder from the San Leon Volunteer Fire Department, Scott Lyons, arrived, followed by the EMS. Lyons asked the plaintiff if he was alright or needed any help. The plaintiff cursed and then spit at him. Lyons therefore backed away and noted that the plaintiff's face was scraped and dirty from being held face-down on the driveway. The EMS evaluated the plaintiff and noted he had scratches on his face, only. Defendants Young and Davidson state in their affidavits that at no time did either of them strike the plaintiff. The plaintiff was charged with assault on a public servant and resisting arrest.

In his response to the defendants' motion for summary judgment, the plaintiff asserts that the defendants knowingly filed fabricated police reports and affidavits to cover-up their unlawful and unethical conduct. He also asserts that (1) he did not resist arrest; (2) excessive force was

used against him by the defendants; (3) the defendants violated state law and policies during the arrest; (4) defendant Davidson kicked the plaintiff while the plaintiff was on the ground; and (5) he was refused medical treatment.

## II.    SUMMARY JUDGMENT

In support of their motion for summary judgment, the defendants submitted the following evidence:

    A.    Exhibit A - Affidavit of John Pruitt (Policies and Procedures; Dispatch Records and Offense Reports);

    B.    Exhibit B - Affidavit of Catherine Holder (jail records & medical records);

    C.    Exhibit C - Affidavit of Deputy Jay Young;

    D.    Exhibit D - Affidavit of Deputy Donna Bouse;

    E.    Affidavit of Jonathan Davidson;

    F.    Affidavit of Scott Lyons.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248. "The [movant] bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact." *Lynch Props. Inc. v. Potomac Ins. Co.,* 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex v. Catrett*, 477 U.S. 317, 322-325)). Once the movant caries this initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. See *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The nonmovant must go beyond the pleadings and designate specific facts proving that a genuine

issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmovant may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. FED. R. CIV. P. 56(e). "[T]he substantive law will identify which facts are material. *Anderson,* 477 U.S. at 248.

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625. "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004). Thus, "[t]he appropriate inquiry is 'whether the evidence represents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005)(quoting *Anderson*, 477 U.S. at 251-252). If the moving party pleads in good faith that it is entitled to absolute or qualified immunity, "the burden shifts to the plaintiff to rebut it." *Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003) (internal citations omitted). Thus, "[t]he burden is on a plaintiff to overcome a defendant's defense of qualified immunity." *Burnes-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir. 1994).

## III.    ANALYSIS & DISCUSSION

The plaintiff claims that the defendants used excessive force in effecting his arrest, and that he was denied medical attention.

All claims that law enforcement officers have used excessive force in the course of an arrest should be analyzed under the Fourth Amendment and a standard of reasonableness. *Graham v. Connor*, 490 U.S. 386 (1989). The Fifth Circuit has held that to prevail on a § 1983

excessive force claim, a plaintiff must show: "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999) (internal citations omitted). Such force must be determined to be "clearly unreasonable." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009); *see also Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009). Determining whether the use of force is reasonable under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). Even though the Court must consider the evidence in the light most favorable to plaintiffs, the reasonableness of the use of force is to be judged "from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)); *see also Ballard v. Burton*, 444 F.3d 391, 402-03 (5th Cir. 2006). The Court must allow for the fact that "police officers are often forced to make split second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation. *Graham*, 490 U.S. at 397. The officers' underlying intent or motivation is irrelevant: "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Id.*; *see also Pierce v. Smith*, 117 F.3d 866, 871 n.5 (5th Cir. 1997).

In this case, the plaintiff alleges that he was pulled out of his car, thrown on the ground and repeatedly kicked and punched by deputy Davidson, "causing facial injuries and other injuries." These allegations are not supported by the record. The facts reveal that the plaintiff

refused to stop his car when deputy Davidson turned on his emergency lights and siren. Once the plaintiff did stop, he twice refused to get out of his car when deputy Davidson told him to. The affidavits of deputies Davidson, Young and Bouse reveal that the plaintiff attempted to strike deputy Davidson when Davidson grabbed his jacked to pull him out of the car. (Doc. No. 40, Exhs. C, D, & E). The plaintiff lunged at Davidson and knocked him to the ground in pain. Deputy Young then grabbed the plaintiff and, despite resistance, wrestled him to the ground and handcuffed him.

The plaintiff's medical records do not reveal, nor has the plaintiff provided any evidence of, a physical injury beyond scrapes on his face resulting from the deputies' attempts to subdue him when he was face-down on the ground. The plaintiff has also failed to show that he had a serious medical need or that he suffered deliberate indifference.  To successfully plead a claim of deliberate indifference, a plaintiff must allege facts sufficient to show that defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical need." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. (2001). The affidavit of first responder Lyons reveals that the plaintiff was offered treatment immediately after being placed in the patrol car and he refused it. (Doc. No. 40, Exh. F). The medical records reveal that the plaintiff was treated for facial injuries and that his complaints related generally to his foot, which was injured prior to the incident made the basis of this suit. The plaintiff not only fails to allege facts sufficient to satisfy the stringent "deliberate indifference" standard, he has present no factual evidence that he suffered any injury at all other than scrapes to his face that were caused by his own actions of resisting arrest.

Qualified immunity protects government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). For an official to face liability, two prongs must be answered affirmatively: (1) whether the defendant's conduct violated a constitutional right, and (2) whether the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223 (2009).

Given the evidence before the Court, there is no material fact that would support the plaintiff's claim of excessive force, especially given the circumstances surrounding his arrest. The plaintiff refused to cooperate with the officers or to calm down, and vigorously resisted arrest even after being wrestled to the ground. Regardless of whether the officers were accurate in all of their calculations concerning the threat that the plaintiff posed to others' safety, "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene." *See Graham*, 490 U.S. at 396. This Court is of the opinion that no factfinder could reasonably second-guess the officers' actions in detaining the plaintiff. The plaintiff's Fourth Amendment claim of excessive force fails as a matter of law.

The plaintiff also asserts that the officers lacked probable cause to stop, or arrest him. This allegation is contradicted by the evidence. Officers may lawfully stop an individual and conduct an investigation based on reasonable suspicion. *See Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000). The evidence shows that the plaintiff ignored deputy Davidson's emergency lights and siren to pull over for at least sixteen blocks. At this point, probable cause was established.

The plaintiff's claim that the defendants' motion for summary judgment lacks merit because he was never charged with reckless driving is also without merit. The plaintiff was charged with attack on a public servant and evading arrest; therefore, the matter of reckless driving is of no moment and does not require confirmation.

Finally, the plaintiff has sued Sheriff Freddie Poor in his official capacity as Sheriff. The plaintiff claims that he suffered excessive force injuries that were "caused by a breakdown of policies, custom or usage of Sheriff Dept. Policy." (Doc. No. 1, p. 8). Because a suit against a government employee in his official capacity is a suit against the governmental entity, the Court will analyze the claim as one against the county. *See Bennett v. Pippin*, 74 F.3d 578 (5th Cir. 1996).

As a unit of local government, Galveston County cannot be held liable under 42 U.S.C. § 1983 for the actions of officers or employees on a theory of *respondeat superior*. *Monell v. New York Dep't of Social Serv.,* 436 U.S. 658, 691 (1978). A municipality such as Galveston County is only liable under § 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy. *Id*. at 694. Thus, municipal liability under § 1983 requires proof of three elements in addition to the underlying claim of a violation of rights: "a policymaker; an official; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Cox v. City of Dallas, Tex.,* 430 F.3d 734, 748 (5th Cir. 2005), *cert. denied*, 547 U.S. 1130 (2006).

The defendants argue that the plaintiff has not demonstrated that he suffered harm pursuant to an official policy of the Sheriff's Office. "An 'official policy' is either a policy statement, ordinance, regulation, etc., that has been officially adopted by a policymaker, or a persistent, widespread practice of officials or employees, which although not authorized by

officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents the municipality's policy." *Cox*, 430 F.3d at 748. The defendants have provided evidence that the Galveston County Sheriff's Office had a constitutionally valid policy governing the use of force. (Doc. No. 40, Exh. A - Use of Force Policy). The plaintiff has provided no evidence, nor does the record reflect, that the plaintiff was injured by an excessive use of force in violation of that policy, that he suffered any injury as a result of the violation of any official policy, or that he suffered any constitutional violation as a result of the breakdown of an official policy. The claim against Sheriff Poor in his official capacity is without merit. (All claims brought against Sheriff Poor in his individual capacity were dismissed by order of the Court on April 22, 2011. (Doc. No. 43)).

## IV.    CONCLUSION

For the reasons stated above, the Court is of the opinion, having viewed the evidence in a light most favorable to the plaintiff, that there is no actual controversy from which a material disputed fact issue arises. *See Anderson*, 477 U.S. at 247- 48. Accordingly, the defendant's motion for summary judgment is **GRANTED** and this case is **DISMISSED** for failure to state a claim for which relief can be granted.

All pending motions, if any, are **DENIED**.

It is so **ORDERED**.

**The Clerk shall provide a copy of this order by regular mail, facsimile transmission, or e-mail to: (1) the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-2159; (2) the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, fax: 936-437-4793; and (3) the District Clerk for the Eastern District of**

**Texas, Tyler Division, 211 West Ferguson, Tyler, Texas, 75702, Attention: Manager of the Three-Strikes List.**

SIGNED at Houston, Texas this 29th day of March, 2012.

Kenneth M. Hoyt
United States District Judge